UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| TOMMY FURLOW and JOSH BERRYHILL, Each Individually and on Behalf of All Others Similarly Situated, | § § § § | |
| Plaintiffs, | § § | |
| v. | § § | SA-15-CV-1156-DAE |
| BULLZEYE OILFIELD SERVICES, LLC, and KEITH MAXEY, Individually and as an Officer of BULLZEYE OILFIELD SERVICE, LLC, | § § § § § § | |
| Defendants. | § § | |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

**To the Honorable United States District Judge David A. Ezra:**

This Report and Recommendation concerns Plaintiffs' Motion for Award of Attorneys' Fees and Costs (Docket Entry 55). The motion was referred to the undersigned for disposition pursuant to Western District of Texas Local Rule CV-72 and Appendix C. For the reasons set forth below, I recommend that the Motion (Docket Entry 55) be **GRANTED IN PART** and that the Court award Plaintiffs attorney's fees in the amount of $40,967.82 and costs in the amount of $2,904.47.

**I.  Jurisdiction.**

Plaintiff's suit alleges violations of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* (Docket Entry 3, at 1.) The Court possesses subject matter jurisdiction pursuant to 28 U.S.C. § 1331. I have authority to issue this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

## II. Background.

Plaintiffs Tommy Furlow and Josh Berryhill filed this collective action, both individually and on behalf of all others similarly situated, against Defendant Bullzeye Oilfield Service, LLC, to recover unpaid overtime wages they earned when working as hourly-paid Hands or Operators in Bullzeye's oilfield operations. (Docket Entry 3, at 6–7.) Plaintiffs also sought liquidated damages, prejudgment interest, civil penalties, costs, and attorney's fees. (*Id.* at 8.) The Court conditionally certified a class; notice was mailed, five individuals filed opt-ins; and the parties engaged in discovery, including depositions. (*Id.* at 6.)

Defendants offered to pay back wages based on a two-year limitations period plus liquidated damages; Plaintiffs rejected this offer, based upon their position that Defendants' failure to pay overtime compensation was willful in nature and they were entitled to back wages based on a three-year limitations period. (Docket Entry 59, at 3–6.) Defendants eventually filed a motion for partial summary judgment, arguing that no evidence supported a willfulness finding in this case. (Docket Entry 30.) The District Court granted Defendants' motion, and referred the case to mediation before U.S. Magistrate Judge Elizabeth ("Betsy") S. Chestney. (Docket Entry 38.) (Docket Entry 47, at 4.) At the mediation, the parties reached an agreement concerning damages: the parties settled Plaintiffs' claims for damages for a total of $25,500, which according to Defendants represents the total back pay owed under the two-year limitations period plus liquidated damages. (*See* Docket Entry 47, at 4; Docket Entry 59, at 1.) The parties also agreed that Plaintiffs were entitled to reasonable attorney's fee under FLSA, but they could not agree as to the amount of the fee in this case. (Docket Entry 47, at 4.) Therefore, the parties agreed to submit the fee issue to the Court for decision. (*Id.*)

Plaintiffs filed their Motion for Award of Attorneys' Fees and Costs, seeking $91,780.50 in attorney's fees, and $3,710.16 in costs. (Docket Entry 55, at 1.) Defendants responded to the

2

motion, arguing that the amount of Plaintiffs' requested fees is excessive and requesting that the Court reduce the lodestar fee amount by 75%. (Docket Entry 59, at 2, 23.)

**III.  Legal Standard.**

Under the Fair Labor Standards Act, the District Court must award reasonable attorney's fees and costs of the action to the prevailing party. *See* 29 U.S.C. § 216(b); *Saizan v. Delta Concrete Prods. Co.*, 448 F.3d 795, 799 n.7 (5th Cir. 2006) (noting that reasonable fees should be awarded to "prevailing party" even though that term does not appear in the FLSA's text). The Fifth Circuit uses a two-step process to calculate attorney's fees in FLSA cases. *See Black v. SettlePou, P.C.*, 732 F.3d 492, 502 (5th Cir. 2013). First, the lodestar method is used to calculate an appropriate fee award by multiplying the number of hours reasonably spent on the case by an appropriate hourly rate in the community for such work. *Saizan*, 448 F.3d at 799. A plaintiff seeking attorney's fees is "charged with the burden of showing the reasonableness of the hours billed" and also that the attorneys "exercised billing judgment." *Id.* Billing judgment requires documentation of both the hours charged and the hours written off as unproductive, excessive, or redundant. *Id.* The remedy for a lack of billing judgment is a reduction in hours "by a percentage intended to substitute for the exercise of billing judgment." *Id.*

Reasonable hourly rates are determined on the basis of prevailing rates for attorneys of similar skill and experience in the relevant market. *McClain v. Lufkin Indus., Inc.*, 649 F.3d 374, 381 (5th Cir. 2011) (citing *Blum v. Stenson*, 465 U.S. 886, 895 (1984)). These rates are usually established through affidavits of other attorneys practicing in the relevant community. *Tollett v. City of Kemah*, 285 F.3d 357, 368 (5th Cir. 2002). The Fifth Circuit has interpreted the "relevant community" to mean the city in which the district court sits. *See, e.g., Walker v. U.S. Dep't of Hous. & Urban Dev.*, 99 F.3d 761, 770 (5th Cir. 1996) (describing the relevant community as the "Dallas legal market").

3

There is a strong presumption that the lodestar amount constitutes the reasonable fee. *Black*, 732 F.3d at 502. However, a court may decrease or enhance the lodestar amount based on twelve factors set forth in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). The *Johnson* factors are: (1) the time and labor required to represent the clients; (2) the novelty and difficulty of the issues in the case; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney; (5) the customary fee charged for those services in the relevant community; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Id.* at 717–19. If a *Johnson* factor was taken into account when calculating the lodestar, the lodestar may not be adjusted based on this factor. *Saizan*, 448 F.3d at 800 (quoting *Migis v. Pearle Vision*, 135 F.3d 1041, 1047 (5th Cir. 1998)).

IV. **Analysis.**

Plaintiffs seek an award of attorney's fees in the amount of $91,780.50 and costs in the amount of $3,710.15. Plaintiffs represent to the Court that their counsel spent a total of 307.75 hours pursuing this case, but they seek a fee award for only 253.45 hours, due to deductions their counsel made in the exercise of billing judgment. (Docket entry 55-2, at 5–6.) Plaintiffs' fee request pertains to work performed by twelve specific individuals, plus a law clerk and various firm staff. (*See* Docket Entry 55-2, at 5–7.) Plaintiffs provided the Court with a chart indicating the time spent by each time keeper, the time keeper's hourly rate, and the reduction of hours made

for each time keeper in exercising billing judgment. (Docket Entry 55-2, at 5–6, 10.) The chart sets out a total fee of $91,780.50.[1] (*See* Docket Entry 55, at 3; 55-2, at 5–6.)

After a review of the records submitted to the Court and Defendants' objections thereto, the undersigned finds that some reductions are warranted in determining the lodestar amount, both in the rate of compensation sought by Plaintiffs' attorneys and in the number of hours for which compensation is requested. The undersigned finds no basis to adjust the lodestar amount based on the *Johnson* factors. Additionally, the undersigned finds that a portion of the costs Plaintiffs request are not recoverable.[2]

### A.    *Hourly rates.*

The first step in determining the lodestar is determining a reasonable hourly rate. The State Bar of Texas periodically produces an Attorney Hourly Rate Survey ("Rate Survey"), which details the median hourly rates for Texas attorneys, broken down by city, specialty, firm size, and years of practice, among others. The current version of the Rate Survey is for the year 2015. *See* State Bar of Texas, 2015 Hourly Rate Fact Sheet, *available at* https://www.texasbar.com/AM/Template.cfm?Section=Archives&Template=/CM/ContentDisplay.cfm&ContentID=34182 (last visited December 27, 2018). The 2015 Rate Survey lists a median rate of $258 for labor and

---

[1] Plaintiffs' chart appears to make small arithmetical errors in calculating the fee for some time keepers. The correct calculation appears to total $91,780.26. (*See* Docket Entry 55-2, at 5–6.)

[2] Defendants also object to Plaintiffs' motion for fees because Plaintiffs failed to confer with Defendants prior to filing the motion, as required by Local Rule CV-7(j). However, the parties notified the Court in its Joint Stipulation and Motion for Approval of Settlement Upon Filing that they could not agree on the amount of a reasonable fee in this case. (Docket Entry 47, at 4.) Plaintiffs' counsel submitted a demand of $55,750 in attorney's fees prior to the mediation, but the parties could not agree. (*See* Docket Entry 59, at 7.) If Defendants did not agree to pay $55,750 in attorney's fees, it is clear that they would not have agreed to pay the amount sought by way of Plaintiffs' motion. Accordingly, any failure to comply with Local Rule CV-7(j) is immaterial.

employment attorneys practicing in the San Antonio area. (*Id.* at 10.) Courts in this district regularly rely upon the applicable Rate Survey when determining the reasonability of a requested hourly rate. *See, e.g., Rodriguez v. Mech. Tech. Servs., Inc.*, No. 1:12-CV-710-DAE, 2015 WL 8362931, at *6 (W.D. Tex. Dec. 8, 2015) (collecting cases). When relying on the Rate Survey, the Court will utilize the median rates as a starting point, and then evaluate whether the requested rates should be adjusted based upon various factors, including the size of the billing attorney's firm, the nature of the litigation, and the billing attorney's specific credentials. *See, e.g., Hoffman v. L & M Arts*, No. 3:10-CV-0953-D, 2015 WL 3999171, at *2 (N.D. Tex. July 1, 2015) (nature and complexity of the litigation warranted use of rates higher than median); *Ibarra v. United Parcel Serv., Inc.*, No. MO-10-CA-113, 2013 WL 12121463, at *2 (W.D. Tex. July 9, 2013) (rate higher than median justified where attorney was a certified specialist in employment law); *Radiant Sys., Inc. v. Am. Scheduling, Inc.*, No. 3:04-CV-2597-P, 2006 WL 2583266, at *7 (N.D. Tex. Sept. 7, 2006) (comparison for purpose of determining reasonableness of rate should be between firms of equal size). The party seeking attorney's fees bears the burden of establishing the reasonableness of the rates billed. *Riley v. City of Jackson, Miss.*, 99 F.3d 757, 760 (5th Cir. 1996) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)).

Plaintiffs seek fees for fifteen timekeepers in this case, ranging in hourly rate from $50 to $500 per hour. (Docket Entry 55-2, at 5–6.) Of those fifteen individuals, Defendants argue that the hourly rates requested for attorneys Josh Sanford ($500), Maryna Jackson ($350), Vanessa Kinney ($350), Anna Stirlitz ($350), Chris Burks ($300), and Rebecca Matlock ($235) are

unreasonable.[3] This Report and Recommendation first considers the appropriate rate for Mr. Sanford, then considers his associates.

1. Josh Sanford.

Plaintiffs seek fees of $500 per hour for Mr. Sanford's time. Defendants argue that this hourly rate is excessive and that the record does not support an upward departure to nearly double the State Bar of Texas Rate Survey median hourly rate. The undersigned agrees. Neither the size of Mr. Sanford's firm, nor the nature of the litigation, nor Mr. Sanford's specific credentials justify a $500 per hour rate.

As for the size of Mr. Sanford's firm, Mr. Sanford indicates in his declaration that he manages fifteen attorneys. (Docket Entry 55-2, at 1.) The Rate Survey indicates that the median hourly rate for firms with 11 to 24 attorneys is $215; the median rate for firms with 41 to 60 attorneys is $263, and for 201 to 400 attorneys is $293. Although counsel's firm is not particularly small, it is not large enough to justify the type of upward adjustment that a large law firm may demand from its clients.

As for the nature of the litigation, Defendants characterize this case as a "small, garden-variety collective action" under FLSA, involving two named Plaintiffs and five opt-ins. (Docket Entry 59, at 1.) The undersigned agrees that nothing in the record suggests that this case is of such complexity that an upward adjustment of nearly double the median rate for labor and employment attorneys in the San Antonio area.

As for Mr. Sanford's specific credentials, he states that he has prosecuted over 100 wage lawsuits in Texas in the past two-and-a-half years, including FLSA claims. (Docket Entry 55-2,

---

[3] Defendants do not challenge the rates proposed for the remaining attorneys and support staff. (Docket Entry 59, at 13.)

7

at 1–2.) He has served as lead counsel on numerous wage and hour cases in federal courts in the past five years, including both individual and collective action claims, and has successfully litigated numerous wage and hour cases resulting in settlements or judgments in his clients' favor. (*Id.* at 3–4.) Since 2009, cases filed by the Sanford Law Firm have resulted in greater than $11 million in settlement and judgment money for wage and hour violations. (*Id.* at 5.) Although Mr. Sanford is licensed in the state and federal courts located in Arkansas, Colorado, and Texas, he does not claim to be board certified in any specialty. (*See generally* Docket Entry 55-2.) There is no doubt that Mr. Sanford has substantial experience that is relevant to this case, and that some upward adjustment from the Rate Survey's median rate for San Antonio area labor and employment attorneys may be justified. However, the undersigned finds insufficient justification for an upward adjustment to nearly double the median rate.

In support of the request for a $500 per hour rate, Mr. Sanford declares that he is aware of customary rates for attorneys practicing labor and employment law within the San Antonio area, and that he gained such knowledge through his own practice.[4] (Docket Entry 55-2, at 8–9.) However, Mr. Sanford did not cite a single case in which he was awarded fees at the rate of $500 per hour.

Plaintiffs also submitted declarations by Trang Tran and Rex Burch in support of their request for attorney's fees. Neither Mr. Tran nor Mr. Burch provide opinions regarding the reasonableness of the requested fees for locales limited to the San Antonio area. Mr. Tran provides

---

[4] Mr. Sanford also claims he gained knowledge about hourly rates in the San Antonio area by having conversations with other attorneys, including Trang Tran of the Tran Law Firm. (Docket Entry 55-2, at 8.) The undersigned notes that Mr. Tran recently requested, in another case against Defendant Bullzeye in this Division, an award of attorney's fees at an hourly rate of $450; the Court, however, awarded Mr. Tran only $325 per hour. *See Gill v. Bullzeye Oilfield Svcs., LLC,* Civil No. SA-15-CV-1166-DAE, 2018 WL 4677902, at *5 (W.D. Tex. July 19, 2018), *report and recommendation adopted,* 2018 WL 4770853 (Sept. 25, 2018).

opinions about "rates charged by other attorneys in the Western District of Texas who have similar qualifications, experience and reputation" (Docket Entry 55-9, at 3); the Western District of Texas, however, encompasses nine divisions, including Austin, where labor and employment attorneys reported a higher median hourly rate. Mr. Burch discusses fees charged for work in Texas federal courts, as well as awards he has obtained in Massachusetts, New York, and California. (*See* Docket Entry 55-10, at 3–4.) Again, these opinions are not limited to the relevant market.[5]

Because the relevant market to be considered in awarding attorney's fees is the city in which the litigation takes place—in this case, San Antonio—the Court should give less weight to Mr. Tran's and Mr. Burch's opinions as to the reasonableness of Mr. Sanford's requested rate of $500. *See Walker*, 99 F.3d at 770. Nevertheless, I find that Mr. Sanford's extensive experience in these types of cases warrants an upward adjustment from the $258 average hourly rate. I recommend that Mr. Sanford's hourly rate be set at $325.

---

[5] Plaintiffs also attached an "Exemplary Declaration" of Amy Gibson that was created for the *Gill v. Bullzeye* case. (*See* Docket Entry 55-11.) Ms. Gibson includes in her declaration a chart detailing hourly rates approved in various cases across Texas. For the San Antonio area, the rates include $750 for attorney Ricardo Cedillo, $425 for attorney Paul J. Lukas, $400 for Douglas Welmaker, $395 for Ramon Bissmeyer, $350 for Oscar Villareal, $350 for J. Derek Braziel, and various attorneys at a rate of $300 or less. (Docket Entry 55-11, at 29–33.) Those attorneys do not necessarily provide apt comparators for Mr. Sanford. Mr. Cedillo had been licensed for 33 years at the time of his fee award, Mr. Lukas had been licensed for 24 years, Mr. Welmaker had been licensed for 21 years, Mr. Bissmeyer had been licensed for 19 years and is board certified in labor and employment law, Mr. Villareal had been licensed for 36 years, and Mr. Braziel had been licensed for 20 years and is board certified in labor and employment law. Mr. Sanford has been licensed for 17 years and is not board certified.

2. Associates.

Plaintiff seeks fees of $350 for associate attorneys Maryna Jackson[6], Vanessa Kinney, and Anna Stirlitz; $300 for associate attorney Chris Burks; and $235 for associate attorney Rebecca Matlock. (Docket Entry 55-2, at 5–6.) Defendants argue that nothing in the record justifies an upward departure from the State Bar of Texas median hourly rates for attorneys of their respective experience in the San Antonio market. Defendants request that the Court set the hourly rates at $250 for Ms. Jackson, Ms. Kinney, Ms. Stirlitz, and Mr. Burks; and $200 for Ms. Matlock.

The record contains no information about Ms. Jackson's qualifications, other than the fact that she has been in practice for eight years. (Docket Entry 59, at 13.) Ms. Kinney has been in practice for ten years, with a primary practice in domestic relations and contract litigation. (*Id.*) Ms. Stirlitz, although licensed for 29 years, spent many of those years in inactive status, and primarily works in juvenile and family law. (*Id.*) Mr. Burks practices both family law and employment litigation, and has been licensed for seven years. (*Id.*) There is no indication that any of these associate attorneys are board certified in labor and employment law. In light of the information contained in the record, the undersigned finds no reason to depart from the Rate Survey's median hourly rate of $250 for Ms. Jackson, Ms. Kinney, Ms. Stirlitz, and Mr. Burks.

Ms. Matlock practices primarily in employment litigation, but has only been licensed for three years. (Docket Entry 59, at 13.) According to the Rate Survey, the median hourly rate for attorneys licensed 0 to 6 years and practicing in the San Antonio area is $200. (Rate Survey, at 12.) In light of Ms. Matlock's relative lack of experience, I find $200 per hour to be a reasonable rate for her time.

---

[6] It appears that there is a typographical error in Mr. Sanford's declaration regarding Ms. Jackson's hourly rate, listing it at $50 instead of $350. (*See* Docket Entry 55-2, at 5.) The $3,360 claimed for 9.6 hours of work calculates to an hourly rate of $350. (*Id.*)

10

B.  *Number of hours.*

The second step of calculating the lodestar is to determine the number of hours reasonably spent on the case. The party seeking attorney's fees is charged with the burden of showing the reasonableness of the hours billed and proving that they exercised billing judgment. *Saizan*, 448 F.3d at 799. "Billing judgment requires documentation of both the hours charged and the hours written off as unproductive, excessive, or redundant." *Id.* The remedy for a lack of billing judgment is a reduction in hours "by a percentage intended to substitute for the exercise of billing judgment." *Id.*

Plaintiffs produced copies of the Sanford Law Firm's time entries, including extensive spreadsheets sorting the time entries by date, category of work, and time keeper. (*See* Docket Entries 55-3, 55-4, 55-5, 55-6.) Defendants reviewed Plaintiffs' time entries—numbering greater than 800—and lodged objections to over 600 of the entries. (Docket Entry 59, at 14; 60-1.) Defendants argue that Plaintiffs' counsel demonstrated little billing judgment because the fee submissions contain many entries that (1) are unproductive, excessive, or redundant; (2) are unsupported or vague; (3) constitute clerical work; or (4) constitute travel time that is not recoverable. (Docket Entry 59, at 14.) Each argument is addressed below.

    1.    Unproductive, excessive, or redundant entries.

*Unproductive.* The attorney's fees should be reduced for any unproductive hours worked, such as hours that resulted in work product that was never filed or served, and for hours spent pursuing claims that were unsuccessful. Time spent preparing pleadings and other documents that are never filed or used in a case should be disallowed. *Rozell v. Ross-Holst*, 576 F. Supp. 2d 527, 538–39 (S.D.N.Y. 2008). Time spent pursuing unsuccessful claims are also non-compensable. *See Walker v. U.S. Dept. of Housing and Urban Dev.*, 99 F.3d 761, 769 (5th Cir. 1996) (party

seeking fees cannot bill for time on issues on which they do not prevail and cannot have prevailed on issues they did not pursue). Defendants allege that Plaintiffs' counsel charged for preparing Plaintiffs' initial disclosures and a summary judgment motion that were never filed or served. (Docket Entry 59, at 17–18.) Plaintiffs' counsel already reduced his hours for most of the work performed in relation to the motion for summary judgment on the issue of willfulness. However, additional reductions appear appropriate for work performed creating documents that were never filed or served, and for the remaining work related to the never-filed motion for summary judgment.

*Excessive.* Courts have substantially reduced attorney's fee awards for work product that was copied or derived from prior work product in similar cases. *See Davis v. Klenk*, No. 3:12-CV-115-DPM, 2012 WL 5818158, at *2 (E.D. Ark. Nov. 15, 2012) (reducing Sanford Law Firm fees as a result of charging too many hours for essentially tailoring a form); *Jones v. RK Enterprises of Blytheville, Inc.*, 3:13-CV-00252-BRW, 2016 WL 1091094, at *3 (E.D. Ark. Mar. 21, 2016) (same); *cf. Mark v. Sunshine Plaza, Inc.*, Civil Action No. 16-455, 2018 WL 1282414, at *7 (E.D. La. Mar. 12, 2018) (reducing time for preparing motion for award of attorney's fees from 16.21 hours to 4 hours where attorney was highly experienced in type of case at issue). Defendants argue that this case was a relatively simple FLSA dispute, and the pleadings filed in this case are "essentially forms that Plaintiffs' counsel has used in the past." (Docket Entry 59, at 14.) Defendants suggest that Plaintiffs' counsel billed excessive hours for drafting a scheduling order, revising the collective action consent form they had used many times in the past, filling out their clients' W-9 forms, and calculating their damages. (Docket Entry 59, at 16.) The undersigned agrees that the hours billed for these tasks were excessive and that they should be reduced accordingly.

*Redundant.* Time that is duplicative or redundant should be excluded from an award of attorney's fees. *Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993) (citing *Hensley*, 461 U.S. at 432–34). Hours resulting from overstaffing a case, even though actually expended, are not reasonable, and should be excluded from an award of attorney's fees. *Brown v. Sea Mar Mgmt, LLC*, No. Civ. 04-1486, 2006 WL 3328194, at *3 (W.D. La. Nov. 15, 2006). Plaintiffs' counsel assigned over a dozen lawyers to work on this case at various times, and this led to inefficiencies and duplication of work. In addition to duplication of work, having fifteen time keepers on a single case resulted in many charges for intraoffice conferences to discuss various assignments. Plaintiffs' counsel has been warned about this type of duplicative billing in the past. *See, e.g., Jones*, 2016 WL 1091094, at *4; *Burchell v. Green Cab Co.*, Case No. 5:15-CV-05076, 2016 WL 894825, at *3 (W.D. Ark., Mar. 8, 2016). The undersigned believes that a reduction of billable hours is necessary in this regard.

      2.    Unsupported or vague entries.

It is the burden of the requesting party to produce supporting documentation that allows a court to verify the applicant's entitlement to a specific award. *Gagnon v. United Technisource, Inc.*, 607 F.3d 1036, 1044 (5th Cir. 2010). Courts may reduce or eliminate hours when the supporting documentation is too vague or incomplete to permit meaningful review. *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 326 (5th Cir. 1995). In this case, some of the entries Defendants contest as vague are sufficient to allow meaningful review. (*See, e.g.*, Docket Entry 60-1, at 3 ("Editing and revision of notice; client declaration"); *id.* at 24 ("Examination of Court rulings on damages calculation").) Other entries, however, are overly vague. (*See, e.g., id.* at 4 ("Examination of documents from client").) A reduction in counsel's billable hours for vague time entries is therefore, appropriate, but not to the full extent that Defendants request.

3. Clerical work.

"Clerical work is not recoverable in an award of attorneys' fees," even where such clerical work is performed by an attorney. *See Black v. SettlePou, P.C.*, No. 3:10-CV-1418-K, 2014 WL 3534991, at *6 (N.D. Tex. July 17, 2014). There are many time entries included in Plaintiffs' request that appear to be clerical in nature. (*See, e.g.*, Docket Entry 60-1, at 5 ("Compose e-mail to Opposing Counsel attaching Discovery Requests").) A reduction in Plaintiffs' counsel's billable hours for this clerical work is appropriate.

4. Travel time.

Plaintiffs' counsel billed time for travel between his Arkansas office and San Antonio for his attendance at hearings, depositions, and mediation. (Docket Entry 55-3, at 27, 37–38, 43.) When no legal work is performed during the travel, travel time is subject to substantial reduction. *See In re Babcock and Wilcox*, 526 F.3d 824, 827–28 (5th Cir. 2008) (discounting attorney travel time by 50%). It is unclear from the record whether any legal work was performed during counsel's travel. (*See* Docket Entry 55-3, at 37–38, 43.) Because Plaintiff has not shown that legal work related to this case was performed during travel, this time is subject to a substantial reduction.[7]

To account for these billing issues, the undersigned recommends that the District Court reduce the number of hours claimed by 37.5% as to each time keeper. *See Ramirez v. Lewis Energy*

---

[7] It appears that Plaintiffs agreed to reduce the fee for travel time by 50% in some instances. (*See* Docket Entry 60-1, at 19.) Although Plaintiffs' requested expenses includes a charge for in-flight wifi on January 11, 2017 (*see* Docket Entry 55-2, at 13), it appears this charge is for a return flight after depositions in this case. Mr. Sanford's time entry merely reflects "Return travel from Deposition," but does not indicate what, if any, work on this case was performed during the flight. (*See* Docket Entry 55-3, at 27.)

*Grp., L.P.*, 197 F. Supp. 3d 952, 958 (S.D. Tex. 2016) (holding that the remedy for failure to exercise billing judgment is a percentage reduction).

C. *Lodestar Adjustment.*

Based upon the recommendations detailed above, the lodestar amount is $40,967.82, as detailed in the following chart:

| Attorney | Hours Claimed | Rate Requested | Total Fee Requested | Hours Approved (37.5% reduction) | Rate Approved | Total Fee Approved |
|---|---|---|---|---|---|---|
| C. Burks | 41.20 | $300.00 | $12,360.00 | 25.75 | $250.00 | $6,437.50 |
| D. Ford | 2.00 | $100.00 | $200.00 | 1.25 | $100.00 | $125.00 |
| S. Gibson | 3.90 | $132.63 | $517.26 | 2.44 | $132.63 | $323.29 |
| M. Jackson | 9.60 | $350.00 | $3,360.00 | 6.00 | $250.00 | $1,500.00 |
| D. King | 10.30 | $100.00 | $1,030.00 | 6.44 | $100.00 | $643.75 |
| V. Kinney | 58.00 | $350.00 | $20,300.00 | 36.25 | $250.00 | $9,062.50 |
| Law Clerk | 3.60 | $75.00 | $270.00 | 2.25 | $75.00 | $168.75 |
| R. Matlock | 14.80 | $225.00 | $3,330.00 | 9.25 | $200.00 | $1,850.00 |
| S. Rauls | 3.10 | $150.00 | $465.00 | 1.94 | $150.00 | $290.63 |
| A. Rheume | 0.30 | $100.00 | $30.00 | 0.19 | $100.00 | $18.75 |
| Staff | 0.30 | $50.00 | $15.00 | 0.19 | $50.00 | $9.38 |
| J. Sanford | 93.25 | $500.00 | $46,625.00 | 58.28 | $325.00 | $18,941.41 |
| S. Short | 4.80 | $100.00 | $480.00 | 3.00 | $100.00 | $300.00 |
| A. Stiritz | 8.30 | $350.00 | $2,905.00 | 5.19 | $250.00 | $1,296.88 |
| TOTAL | 253.45 | | $91,887.26 | 158.41 | | $40,967.82 |

The Court should not make any further enhancements or reductions of the lodestar amount, as the *Johnson* factors addressed by Plaintiffs and Defendant, such as the complexity of this case, the experience of the attorneys, the contingent nature of Plaintiffs' counsel's fees, and the degree of success in this case, have already been considered in calculating the lodestar. *See Blum*, 465 U.S. at 898 (noting novelty and complexity of the issues, special skill and experience of counsel, and quality of representation are subsumed within the lodestar calculation).

15

**D.** *Costs.*

Generally, costs are awarded to the prevailing party in civil suits. *See* FED. R. CIV. P. 54(d)(1). The following may be taxed as costs: (1) fees of the clerk and marshal; (2) fees for printed or electronic recorded transcripts necessarily obtained for use in the case; (3) fees and disbursements for printing and witnesses; (4) fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case; (5) docket fees under 28 U.S.C. § 1923; and (6) compensation of court-appointed experts and interpreters, and salaries, fees, expenses, and costs of special interpretation services under 28 U.S.C. § 1828. 28 U.S.C. § 1920. In addition to taxable costs under § 1920, Texas District Courts have determined that non-taxable costs are also appropriately awarded to prevailing parties in FLSA cases as part of a reasonable fee under 29 U.S.C. § 216(b). *Alex v. KHG of San Antonio, LLC*, 125 F. Supp. 3d 619, 629–30 (W.D. Tex. 2015); *Castro v. Precision Demolition LLC*, Civil Action No. 3:15-CV-0213-D, 2017 WL 6381742, at *10 (N.D. Tex. Dec. 14, 2017); *Rouse v. Target Corp.*, 181 F. Supp. 3d 379, 392 (S.D. Tex. 2016). The party seeking recovery of its costs bears the burden of proving the amount and necessity of its costs. *Holmes v. Cessna Aircraft Co.*, 11 F.3d 63, 64 (5th Cir. 1994).

Here, Plaintiffs request $3,710.15 in costs. (Docket Entry 55-2, at 13–15.) This figure includes charges for the filing fee and service of process, transcripts, copies, postage, and travel expenses, including flights, hotel, parking, ground transportation, meals, and in-flight wifi. (*Id.*) Defendants do not contest the charges for the filing fee ($400), copies and postage ($127.44), and deposition transcripts ($840.50), as these are expense categories that are expressly provided for in § 1920. (Docket Entry 59, at 23.) Defendants do, however, contest all of the other requested expenses. (Docket Entry 59, at 23.)

Defendants contest the $100 for private process server fees related to service of the lawsuit on two parties. (*See* Docket Entry 55-2, at 13.) Private process server fees are recoverable as long as they do not exceed the fees charged by the United States Marshal. *Mancia v. JJ Chan Food, Inc.*, No. 3:12-CV-2467-L(BF), 2016 WL 4468092, at *3 (N.D. Tex. June 21, 2016) (citing *Liberty Ins. Corp. v. Caterpillar, Inc.*, No. SA-13-CV-83-XR, 2014 WL 4999317, at *2 (W.D. Tex. Oct. 7, 2014)). A $50 charge for service of this lawsuit on each Defendant is less than the $65 rate currently charged by the United States Marshal. Therefore, this cost is reasonable.

Defendants next contend that a $190 transcript charge is not taxable because there was no hearing or deposition associated with that transcription in this case, and the charge likely relates to another case. (*Id.*) Plaintiffs did not respond to Defendants' argument, and provided nothing indicating the proceedings to which the $190 charge relates. Therefore, Plaintiffs are not entitled to recover the $190 transcript charge.

Defendants also dispute reimbursement of travel expenses and costs. (Docket Entry 55-2, at 13–14.) Travel expenses are recoverable as attorney's fees under § 216(b). *See Clark v. Centene Corp.*, No. A-12-CA-174-SS, 2015 WL 6962894, at *10 (W.D. Tex. Nov. 10, 2015). Defendants argue that, at a minimum, the Court should disallow the charges related to Mr. Sanford's August 3–4, 2017 trip to San Antonio to attend the summary judgment hearing, because Plaintiffs lost on that issue. The undersigned agrees; $615.68 in expenses related to the summary judgment hearing should be disallowed. Additionally, as mentioned above, Mr. Sanford requests reimbursement for a charge for in-flight wifi on January 11, 2017. (*See* Docket Entry 55-2, at 13.) Although this is not necessarily an unreasonable expense, Plaintiffs have failed to show what, if any, work on this case was performed during the flight. (*See* Docket Entry 55-3, at 27.) Therefore, the $8.00 in-

flight wifi charge should be disallowed. The remainder of the travel expenses Plaintiffs seek are reasonable.

In light of these findings, Defendants should be ordered to pay $2,896.47 of Plaintiffs' costs, a sum which represents all the requested costs except the $190 "transcript cost" and $615.68 in travel expenses that Mr. Sanford incurred to attend the summary judgment hearing.

## V. Conclusion.

Based upon the foregoing, I recommend that Plaintiffs' Motion for Award of Attorneys' Fees and Costs (Docket Entry 55) be **GRANTED IN PART**. The District Court should award Plaintiffs attorney's fees in the amount of $40,967.82 and costs in the amount of $2,904.47. All other requested relief should be **DENIED**.

## VI. Instructions for Service and Notice of Right to Object.

The United States District Clerk shall serve a copy of this Report and Recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested. Written objections to this report and recommendation must be filed **within fourteen (14) days** after being served with a copy of same, unless this time period is modified by the district court. 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). The party shall file the objections with the clerk of the court, and serve the objections on all other parties. A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive or general objections. A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de novo* determination by the district court. *Thomas v. Arn*, 474 U.S. 140, 149–52 (1985); *Acuña v. Brown & Root, Inc.*, 200 F.3d 335, 340 (5th Cir. 2000).

Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

**SIGNED** on January 3, 2019.

Henry J. Bemporad
United States Magistrate Judge